OPINION OF THE COURT
Alan Saks, J.
CPLR article 78 application denied and petition dismissed on the merits.
Petitioner, the owner of a building, attempted to convert it to cooperative ownership under an eviction plan. When the plan was first offered to the tenants in June, 1979, seven rent-stabilized tenants (the intervenors-respondents) chose not to buy. The plan was declared effective in August, 1980. When the building was transferred to the cooperative corporation, the shares of these apartments were transferred to petitioner. Thereafter, in August, 1980, these tenants, who would have become subject to eviction when their leases were due to expire, commenced an action to nullify the plan and have their evictions *893 enjoined pendente lite. The tenants continued to pay the old rent when their leases expired several years ago. They were not then offered any renewals.
Ultimately, in a March, 1983 decision, as amended June 2,1983, the effectiveness of the plan was voided ab initio by the Court of Appeals on a finding that less than the required number of tenants had agreed to purchase. (Alwyn Ct. Tenants’ Assn. v Walentas, 59 NY2d 652.) Subsequently, the plan was successfully converted to a noneviction plan. At that point, when petitioner was mandated to offer renewal leases, the present controversy arose.
Although petitioner could have offered these tenants renewal leases while the eviction plan was being litigated, he chose not to, gambling on sustaining the plan, evicting them and selling their apartments at market value.
In September, 1983, petitioner finally offered the tenants new leases that incorporated increases based on what the tenants would have been paying if their old leases had been renewed on expiration. He also demanded payment of retroactive increases in back rent for the periods since their earlier leases had expired. The tenants refused to sign these leases and protested to the board, contending that any increases should be based upon the rent paid in their expired leases, without retroactivity and without interim increases in the base. In an opinion rendered February 16,1984, the tenants’ position was upheld by the board. This article 78 proceeding ensued.
The board’s determination has warrant in the record and a rational basis in law and is entitled to be sustained on judicial review.
The tenants are entitled to renewal leases at guidelines increases based upon the amount in their expired leases, as if they were presently under leases now expiring. Additional rent increases and retroactivity therefor, as sought by petitioner, are not available because renewal leases had not been timely offered, when their prior leases approached expiration. Petitioner then had two options under section 61 of the Code of the Rent Stabilization Association of New York City, Inc. (the Code). Under subdivision 7 thereof, he *894 could have offered renewal leases with guidelines increases, containing special clauses permitting their termination before the end of their term if the plan were to be sustained. However, although the rent stated in the renewals could have included the guidelines increases, the latter could not have been collected unless and until the plan had been abandoned, and then only prospectively. Until that time, the tenant would have paid rent at the rate in the expired lease. His other option was to do what he did — refuse to offer the tenants renewal leases at all. Then, he would have been free to evict them on the expiration of the old lease, if the plan had been in effect. (Code, § 61, subd 4, par [d]; see, generally, 16th St. Assoc. v Albert, 107 Misc 2d 338.)
Here, no renewal leases were offered until after the eviction plan had been voided and converted to a noneviction plan, at a time when the offer of renewals had become mandatory. Indeed, the eviction plan having been voided ab initio, it can now be seen via hindsight that petitioner defaulted in his obligation to offer renewal leases prior to the expiration of the old ones. Whenever a renewal lease is not offered timely by a landlord, it is the board’s policy, approved by the courts, to require that the belatedly offered renewal take effect prospectively, from the time an executed copy is served on the tenant. (Matter of Briar Hill Apts. v Conciliation & Appeals Bd., 44 AD2d 816.)
In effect, petitioner took upon himself the risk of being held in default in not offering timely renewal, by gambling upon ultimate success in having the eviction plan judicially sustained.
The situation herein is somewhat analogous to that which obtains when a landlord voluntarily opts temporarily to permit a tenant to pay less rent than the maximum rent that would have been permitted under the Rent Stabilization Law. That lesser rent limits the base on which the landlord may predicate future increases on renewal. (See Collingwood Enterprises v Gribetz, Supreme Ct, NY County, April 18, 1975, index No. 18192/73.)
Petitioner’s contention that subdivision 7 of section 61 of the Code entitles him to retroactive increases is without merit. Since there is no regulation dealing directly with *895 this set of facts, petitioner attempts to draw an analogy between his situation and that of an owner who did offer a conditional renewal lease under subdivision 7 of section 61. He argues that that section was enacted to preserve an owner’s rights to regular rent increases, notwithstanding the existence of a cooperative conversion plan, with the right to collect the increases contingent on the plan being abandoned.
That argument overlooks two dispositive points. One is that any rights conferred by subdivision 7 accrue only if a conditional renewal lease had been voluntarily and timely offered to a nonpurchasing tenant. Once having chosen not to offer a cancelable renewal lease and to gamble on the plan being declared effective and sustained as an eviction plan, an owner may not take advantage of this provision. The second is that the right to collect increases under subdivision 7 vests when the plan is abandoned, not where it is declared void ab initio.
Since the tenants were not offered renewal leases for years after their prior leases had expired and the leases, when offered, contained improper rental increases, the board order directing that renewal leases were to commence prospectively only for the full three years elected by the tenants and were to be at guidelines increases based on their old expired leases had warrant in the record and a rational basis in law. Accordingly, the application is denied and the petition dismissed on the merits.